Justice Kennedy
delivered the opinion of the Court.
Each day, according to the Government’s submissions here, the United States Postal Service delivers some 660 million pieces of mail to as many as 142 million delivery points. This case involves one such delivery point — petitioner Barbara Dolan’s porch — where mail left by postal employees allegedly caused her to trip and fall. Claiming injuries as a result, Dolan filed a claim for administrative relief from the Postal Service. When her claim was denied, she and her husband (whose claim for loss of consortium the Dolans later conceded was barred for failure to exhaust administrative remedies) filed suit in the United States District Court for the Eastern District of Pennsylvania, asserting that the Postal Service’s negligent placement of mail at their home subjected the Government to liability under the Federal Tort Claims Act (FTCA), 28 U. S. C. §§ 1346(b)(1), 2674. The District Court dismissed Dolan’s suit, and the Court of Appeals for the Third Circuit affirmed, 377 F. 3d 285 (2004). Both courts concluded that, although the FTCA generally waives sovereign immunity as to federal employees’ torts, Dolan’s claims were barred by an exception to that waiver, 28 U. S. C. § 2680(b). We disagree and hold that Dolan’s suit may proceed.
I
Under the Postal Reorganization Act, 39 U. S. C. § 101 et seq., the Postal Service is “an independent establishment of the executive branch of the Government of the United *484 States,” §201. Holding a monopoly over carriage of letters, the Postal Service has “significant governmental powers,” including the power of eminent domain, the authority to make searches and seizures in the enforcement of laws protecting the mails, the authority to promulgate postal regulations, and, subject to the Secretary of State’s supervision, the power to enter international postal agreéments. See Postal Service v. Flamingo Industries (USA) Ltd., 540 U. S. 736, 741 (2004) (discussing 39 U. S. C. §§ 101, 401, 407, 601-606). Consistent with this status, the Postal Service enjoys federal sovereign immunity absent a waiver. See ibid.; cf. FDIC v. Meyer, 510 U. S. 471, 475 (1994) (“Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit”).
Although the Postal Reorganization Act generally “waives the immunity of the Postal Service from suit by giving it the power ‘to sue and be sued in its official name/ ” Flamingo Industries, supra, at 741 (quoting 39 U. S. C. §401(1)), the statute also provides that the FTCA “shall apply to tort claims arising out of activities of the Postal Service,” § 409(c).
The FTCA, in turn, waives sovereign immunity in two different sections of the United States Code. The first confers federal-court jurisdiction in a defined category of cases involving negligence committed by federal employees in the course of their employment. This jurisdictional grant covers:
“claims against the United States, for money damages, accruing on and after January 1,1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.” 28 U. S. C. § 1346(b)(1).
*485 As to claims falling within this jurisdictional grant, the FTCA, in a second provision, makes the United States liable “in the same manner and to the same extent as a private individual under like circumstances,” though not “for interest prior to judgment or for punitive damages.” § 2674; see generally United States v. Olson, ante, at 44.
The FTCA qualifies its waiver of sovereign immunity for certain categories of claims (13 in all). If one of the exceptions applies, the bar of sovereign immunity remains. The 13 categories of exempted claims are set forth in 28 U. S. C. § 2680, and the relevant subsection for our purposes, pertaining to postal operations, is § 2680(b). It states:
“The provisions of this chapter and section 1346(b) of this title shall not apply to ... [a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter.”
As a consequence, the United States may be liable if postal employees commit torts under local law, but not for claims defined by this exception.
This was the provision relied upon by the District Court and Court of Appeals to dismiss Dolan’s suit. The Court of Appeals’ decision created a conflict with a decision of the Court of Appeals for the Second Circuit. See Raila v. United States, 355 F. 3d 118, 121 (2004). We granted certiorari. 544 U. S. 998 (2005).
II
We assume that under the applicable state law a person injured by tripping over a package or bundle of papers negligently left on the porch of a residence by a private party would have a cause of action for damages. See 28 U. S. C. §§ 1346(b)(1), 2674. The question is whether, when mail left by the Postal Service causes the slip and fall, the § 2680(b) exception for “loss, miscarriage, or negligent transmission of letters or postal matter” preserves sovereign immunity despite the FTCA’s more general statements of waiver.
*486 If considered in isolation, the phrase “negligent transmission” could embrace a wide range of negligent acts committed by the Postal Service in the course of delivering mail, including creation of slip-and-fall hazards from leaving packets and parcels on the porch of a residence. After all, in ordinary meaning and usage, transmission of the mail is not complete until it arrives at the destination. See, e. g., Webster’s Third New International Dictionary 2429 (1971) (defining “transmission” as “an act, process, or instance of transmitting” and “transmit” as “to cause to go or be conveyed to another person or place”). In large part this inference— transmission includes delivery — led the District Court and Court of Appeals to rule for the Government. See 377 F. 3d, at 288; App. to Pet. for Cert. 5a-6a. The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis. Here, we conclude both context and precedent require a narrower reading, so that “negligent transmission” does not go beyond negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address. See Raila, supra, at 121 (holding the postal exception covers “damages and delay of the postal material itself and consequential damages therefrom”). The phrase does not comprehend all negligence occurring in the course of mail delivery.
Starting with context, the words “negligent transmission” in §2680(b) follow two other terms, “loss” and “miscarriage.” Those terms, we think, limit the reach of “transmission.” “[A] word is known by the company it keeps” — a rule that “is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.” Jarecki v. G. D. Searle & Co., 367 *487 U. S. 303, 307 (1961); see also Dole v. Steelworkers, 494 U. S. 26, 36 (1990) (“[Wjords grouped in a list should be given related meaning” (internal quotation marks omitted)). Here, as both parties acknowledge, mail is “lost” if it is destroyed or misplaced and “miscarried” if it goes to the wrong address. Since both those terms refer to failings in the postal obligation to deliver mail in a timely manner to the right address, it would be odd if “negligent transmission” swept far more broadly to include injuries like those alleged here— injuries that happen to be caused by postal employees but involve neither failure to transmit mail nor damage to its contents.
Our interpretation would be less secure were it not for a precedent we deem to have decisive weight here. We refer to Kosak v. United States, 466 U. S. 848 (1984). In Kosak, an art collector alleged in an FTCA suit that artworks he owned were damaged when the United States Customs Service seized and detained them. Id., at 849-850. The question was whether the Government retained immunity based on § 2680(c), a provision that has since been amended but at the time covered:
“[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.” Id., at 852, n. 6 (internal quotation marks omitted).
In its opinion concluding the exception did apply and thus that the United States retained sovereign immunity, the Court gave specific consideration to the postal exception. In a part of the opinion central to its holding, the Court contrasted what it called the “generality of § 2680(c)” with the “specificity of § 2680(b),” id., at 855. The Court observed:
“One of the principal purposes of the Federal Tort Claims Act was to waive the Government’s immunity from liability for injuries resulting from auto accidents *488 in which employees of the Postal System were at fault. In order to ensure that § 2680(b), which governs torts committed by mailmen, did not have the effect of barring precisely the sort of suit that Congress was most concerned to authorize, the draftsmen of the provision carefully delineated the types of misconduct for which the Government was not assuming financial responsibility — namely, ‘the loss, miscarriage, or negligent transmission of letters or postal matter’ — thereby excluding, by implication, negligent handling of motor vehicles.” Ibid, (footnote omitted).
In the present case neither party suggests Kosak’s conclusion regarding negligent operation of postal motor vehicles should be ignored as dictum. In light of Kosak’s discussion, we cannot interpret the phrase “negligent transmission” in § 2680(b) to cover all negligence in the course of mail delivery. Although postal trucks may well be delivering — and thus transmitting — mail when they collide with other vehicles, Kosak indicates the United States, nonetheless, retains no immunity.
Séeking to distinguish postal auto accidents from Dolan’s fall, the Government argues that negligent driving relates only circumstantially to the mail, whereas Dolan’s accident was caused by the mail itself. Nothing in the statutory text supports this distinction. Quite the contrary, if placing mail so as to create a slip-and-fall risk constitutes “negligent transmission,” the same should be true of driving postal trucks in a manner that endangers others on the road. In both cases the postal employee acts negligently while transmitting mail. In addition, as the Second Circuit recognized and as the Government acknowledged at oral argument, focusing on whether the mail itself caused the injury would yield anomalies, perhaps making liability turn on whether a mail sack causing a slip-and-fall was empty or full, or whether a pedestrian sideswiped by a passing truck was hit *489 by the side-view mirror or a dangling parcel. See Raila, 355 P. 3d, at 122-123.
We think it more likely that Congress intendedrto retain immunity, as a general rule, only for injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address. Illustrative instances of the exception’s operation, then, would be personal or financial harms arising from nondelivery or late delivery of sensitive materials or information (e. g., medicines or a mortgage foreclosure notice) or from negligent handling of a mailed parcel (e. g., shattering of shipped china). Such harms, after all, are the sort primarily identified with the Postal Service’s function of transporting mail throughout the United States.
Resisting this conclusion, the Government emphasizes the Postal Service’s vast operations — the 660 million daily mailings and 142 million delivery points mentioned at the outset. See Brief for Respondents 36. As delivery to mailboxes and doorsteps is essential to this nationwide undertaking, Congress must have intended, the Government asserts, to insulate delivery-related torts from liability. If, however, doorstep delivery is essential to the postal enterprise, then driving postal trucks is no less so. And in any event, while it is true “[t]he § 2680 exceptions are designed to protect certain important governmental functions and prerogatives from disruption,” Molzof v. United States, 502 U. S. 301, 311 (1992), the specificity of § 2680(b), see Kosak, supra, at 855, indicates that Congress did not intend to immunize all postal activities.
Other FTCA exceptions paint with a far broader brush. They cover, for example: “[a]ny claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system,” 28 U. S. C. § 2680(i); “[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war,” §2680(j); “[a]ny claim arising in a foreign country,” §2680(k); “[a]ny *490 claim arising from the activities of the Tennessee Valley Authority,” §2680(Z), or “the Panama Canal Company,” §2680(m); and “[a]ny claim arising from the activities of a Federal land bank, a Federal intermediate credit bank, or a bank for cooperatives,” § 2680(n). Had Congress intended to preserve immunity for all torts related to postal delivery— torts including hazardous mail placement at customer homes — it could have used similarly sweeping language in § 2680(b). By instead “carefully delineat[ing]” just three types’ of harm (loss, miscarriage, and negligent transmission), see Kosak, 465 U. S., at 855, Congress expressed the intent to immunize only a subset of postal wrongdoing, not all torts committed in the course of mail delivery.
Further supporting our interpretation, losses of the type for which immunity is retained under § 2680(b) are at least to some degree avoidable or compensable through postal registration and insurance. See United States Postal Service, Mailing Standards, Domestic Mail Manual 609.1.1 (Nov. 10, 2005), available at http://pe.usps.gov/text/dmm300/ 609.htm (as visited Jan. 9, 2006, and available in Clerk of Court’s ease file) (allowing indemnity claims for loss or damage of “insured, collect on delivery (COD), registered with postal insurance, or Express Mail”); 39 CFR § 111.1 (2005) (incorporating by reference the Domestic Mail Manual). The same was true when Congress enacted the FTCA in 1946. See 39 U. S. C. §245 (1940 ed. and Supp. V) (setting rates and conditions for mail insurance); §381 (1946 ed.) (“For the greater security of valuable mail matter the Postmaster General may establish a uniform system of registration, and as a part of such system he may provide rules under which the senders or owners of any registered matter shall be indemnified for loss, rifling, or damage thereof in the mails . . . ”). As Kosak explains, one purpose of the FTCA exceptions was to avoid “extending the coverage of the Act to suits for which adequate remedies were already available,” 465 U. S., at 858 — an objective consistent with retain *491 ing immunity as to claims of mail damage or delay covered by postal registration and insurance. While the Government suggests other injuries falling outside the FTCA'are also subject to administrative relief, even assuming that is true, the provision the Government cites permits only discretionary relief, not an automatic remedy like postal insurance. See 39 U. S. C. § 2603 (indicating the Postal Service “may adjust and settle” personal-injury and property-damage claims “not cognizable” under the FTCA’s administrative relief provision); see also 31 U. S. C. §224c (1940 ed.) (indicating that “[w]hen any damage is done to person or property by or through the operation of the Post Office Department .. . the Postmaster General is invested with power to adjust and settle any claim for such damage when his award for such damage in any case does not exceed $500”); Legislative Reorganization Act of 1946, § 424(a), 60 Stat. 846-847 (repealing §224c as to negligence claims cognizable under the FTCA).
The Government raises the specter of frivolous slip-and-fall claims inundating the Postal Service. It is true that, in addition to other considerations we have identified, Kosak describes “avoiding exposure of the United States to liability for excessive or fraudulent claims” as a principal aim of the FTCA exceptions, 465 U. S., at 858. Slip-and-fall liability, however, to the extent state tort law imposes it, is a risk shared by any business that makes home deliveries. Given that “negligent transmission,” viewed in context and in light of Kosak, cannot sweep as broadly as the Government claims, ordinary protections against frivolous litigation must suffice here, just as they do in the case of motor vehicle collisions.
Finally, it should be noted that this case does not implicate the general rule that “a waiver of the Government’s sovereign immunity .will be strictly construed, in terms of its scope, in favor of the sovereign,” Lane v. Peña, 518 U. S. 187, 192 (1996). As Kosak explains, this principle is “unhelpful” *492 in the FTCA context, where “unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute,” 465 U. S., at 853, n. 9, which “waives the Government’s immunity from suit in sweeping language,” United States v. Yellow Cab Co., 340 U. S. 543, 547 (1951); see also United States v. Nordic Village, Inc., 503 U. S. 30, 34 (1992) (observing “[w]e have on occasion narrowly construed exceptions to waivers of sovereign immunity where that was consistent with Congress’ clear intent, as in the context of the ‘sweeping language’ of the [FTCA]” (quoting Yellow Cab Co., supra, at 547)). Hence, “the proper objective of a court attempting to construe one of the subsections of 28 U. S. C. § 2680 is to identify ‘those circumstances which are within the words and reason of the exception’ — no less and no more.” Kosak, supra, at 853, n. 9 (quoting Dalehite v. United States, 346 U. S. 15, 31 (1953)). Having made that inquiry here, we conclude Dolan’s claims fall outside § 2680(b).
* * *
The postal exception is inapplicable, and Dolan’s claim falls within the FTCÁ’s general waiver of federal sovereign immunity. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Alito took no part in the consideration or decision of this case.