958 So.2d 578 (2007)
Albert LEE, Jr., as personal representative of the estate of Albert Lee, Sr., Appellant,
v.
CSX TRANSPORTATION, INC., Seaboard Coast Line Railroad Company, and Seaboard System Railroad, Inc., Appellees.
No. 2D06-1416.
District Court of Appeal of Florida, Second District.
June 22, 2007.
*579 Hunter W. Carroll, David P. Carlton, and Kenneth Hancock of Carlton & Carlton, Lake Suzy; Archie Lamb of The Lamb Firm, LLC, Birmingham, AL; Christopher LoPalo of Napoli Bern Ripka, LLP, New York, NY; and E. Kirk Wood of The Wood Law Firm, Birmingham, AL, for Appellant.
A. Lamar Matthews, Jr., and Arthur S. Hardy of Matthews Eastmoore Hardy Crauwels & Garcia, P.A., Sarasota; Donald D. Anderson of McGuirewoods, LLP, Jacksonville, and Scott L. Winkelman and Beth M. Kramer of Crowell & Moring, LLP, Washington, D.C., for Appellees.
CANADY, Judge.
The plaintiff in a wrongful death action, Albert Lee, Jr., as personal representative of the estate of Albert Lee, Sr., appeals the final summary judgment entered in favor of the defendant, CSX Transportation, Inc. The action against CSX was predicated on allegations that the cancer which took the decedent's life was caused by toxic environmental contamination released from a coal tar creosote plant owned by CSX in the Nocatee-Hull area of DeSoto County. The summary judgment was based on the trial court's conclusion that the undisputed facts established that *580 the action "was untimely filed" under Florida's Wrongful Death Act.[1]
Section 95.11(4)(d), Florida Statutes (1995), establishes a two-year limitations period with respect to wrongful death actions. "[A] cause of action for wrongful death accrues on the date of death." Fulton County Adm'r v. Sullivan, 753 So.2d 549, 552 (Fla.1999).
Here, it is undisputed that the decedent died more than four years before the plaintiff filed suit. The trial court relied on that undisputed fact to support the legal conclusion that the action against CSX was barred by the two-year statute of limitations. The plaintiff, however, argued before the trial court  as he argues on appeal  that the Florida law with respect to the accrual of the plaintiff's action is preempted by a federal statute, the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), which contains a provision modifying the accrual date with respect to actions for personal injury caused by hazardous substances.
CERCLA establishes a "federally required commencement date" (FRCD) which preempts any earlier accrual date applicable under state law. 42 U.S.C. § 9658 (1994). The FRCD is "the date the plaintiff knew (or reasonably should have known) that the personal injury . . . [was] caused or contributed to by the hazardous substance or pollutant or contaminant concerned." § 9658(b)(4)(A). The FRCD may be applied to an action "brought under State law for personal injury . . . which [is] caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility." § 9658(a)(1) (emphasis added).
The plaintiff contends that the FRCD is applicable to the wrongful death action against CSX and that the trial court therefore erred in relying on the accrual date applicable under Florida law to conclude that the action was untimely filed. CSX argues that the provisions of CERCLA establishing the FRCD do not apply to wrongful death actions. CSX asserts that there is a well-established distinction between wrongful death claims and personal injury claims and that the FRCD is only applicable to personal injury claims.
Accordingly, we must determine whether the reference in § 9658(a)(1) to actions "for personal injury" encompasses wrongful death claims. For the reasons we explain, we conclude that a wrongful death claim does not fall within the scope of the FRCD contained in CERCLA.
In considering the proper interpretation of the federal statutory provisions at issue in this case, we look first to the general principles guiding the interpretation of statutes. Given that the FRCD provision expressly operates as a federal preemption of state law, we also look to the particular principles that have been applied in interpreting the scope of federal statutory provisions preempting state law.
"Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." BP Am. Prod. Co. v. Burton, ___ U.S. ___, 127 S.Ct. 638, 643, 166 L.Ed.2d 494 (2006). "In order to determine the scope [of a statutory provision], we must examine the statute's text in light of context, structure, and related statutory provisions." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 558, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). "A word in a statute may or may not extend to the outer limits of its definitional possibilities. *581 Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Serv., 546 U.S. 481, 126 S.Ct. 1252, 1257, 163 L.Ed.2d 1079 (2006).
An element of the context of a statute is the broader legal context. See Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 71-72, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (discussing "contextual approach" involving "evaluat[ion] of the state of the law" when statutory provision was adopted). Thus, it is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." United States v. Shabani, 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994).
[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.
Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952).
The interpretation of "a statutory provision that expressly pre-empts state law . . . is informed by two presumptions about the nature of pre-emption." Medtronic, Inc. v. Lohr, 518 U.S. 470, 484-85, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (citations omitted). The first presumption is "`that the historic police powers of the States [are] not to be superseded by [federal legislation] unless that was the clear and manifest purpose of Congress.'" Id. at 485, 116 S.Ct. 2240 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). This presumption applies whenever "Congress has `legislated . . . in a field which the States have traditionally occupied.'" Id. (alteration in original) (quoting Rice, 331 U.S. at 230, 67 S.Ct. 1146). "[A] narrow interpretation" with respect to "the scope" of a preemptive statute's "intended invalidation of state law" thus "is consistent with both federalism concerns and the historic primacy of" the states with respect to fields traditionally occupied by the states. Id.; see also Cipollone v. Liggett Group, Inc., 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (stating that "presumption against pre-emption of state police power regulations . . . reinforces the appropriateness of a narrow reading" of the scope of preemptive provisions); 505 U.S. at 531, 112 S.Ct. 2608 (Blackman, J., concurring in part) ("Our precedents do not allow us to infer a scope of pre-emption beyond that which clearly is mandated by Congress' language.").
The second presumption that informs the interpretation of an expressly preemptive statutory provision is that "`[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." Medtronic, Inc., 518 U.S. at 485, 116 S.Ct. 2240 (alteration in original) (quoting Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). The purpose of Congress "primarily is discerned from the language of the pre-emption statute and the `statutory framework' surrounding it." Id. at 486, 116 S.Ct. 2240 (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 111, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) (Kennedy, J., concurring in part and concurring in judgment)). "Also relevant . . . is the `structure and purpose of the statute as a whole.'" Id. (quoting Gade, *582 505 U.S. at 98, 112 S.Ct. 2374 (plurality opinion)).[2]
In a certain sense, a wrongful death claim is undoubtedly a claim for personal injury. Death is the ultimate personal injury. To properly interpret the scope of the FRCD, however, we cannot consider the term personal injury in isolation from the broader legal context in which the term is used. In the provision of CERCLA establishing the FRCD, when the Congress made reference to actions for personal injury, the Congress "borrow[ed][a] term[ ] of art" and "adopt[ed] the cluster of ideas that [is] attached to" that "term[ ] of art." Morissette, 342 U.S. at 263, 72 S.Ct. 240. The ordinary meaning of an "action . . . for personal injury," § 9658(a)(1), is the same as its meaning as a legal term of art. Thus, although a meaning of personal injury which encompasses wrongful death claims is within "the outer limits of [the] definitional possibilities," Dolan, 126 S.Ct. at 1257, the common and long-standing distinction between personal injury claims and wrongful death claims compellingly points to a narrower meaning. And federalism concerns "reinforce[ ] the appropriateness of a narrow reading," Cipollone, 505 U.S. at 518, 112 S.Ct. 2608, with respect to "the scope" of the FRCD's "intended invalidation of state law," Medtronic, Inc., 518 U.S. at 485, 116 S.Ct. 2240.
At common law, "personal tort actions die[d] with the person of either the plaintiff or the defendant," and "the death of a human being was not regarded as giving rise to any cause of action . . . on behalf of a living person who was injured by reason of the death." Wes S. Malone, The Genesis of Wrongful Death, 17 Stan. L.Rev. 1043, 1044 (1965). Legislative enactments "designed to alter the common-law restriction on the transmission of tort claims or tort liability at death are commonly known as survival statutes." Id. "[L]egislation aimed at establishing a separate cause of action for the benefit of designated members of the family of a person whose life was wrongfully taken are usually referred to as wrongful death statutes." Id.; see also Prosser and Keeton on Torts § 125A at 940-42, § 127 at 945-46 (5th ed.1984) (discussing origins of actions for wrongful death).
Actions for wrongful death are as a matter of history and current practice considered separate and distinct from actions for personal injury. As the Florida Supreme Court has recognized, a wrongful death statute is not intended "to preserve the right of action which the deceased had and might have maintained had he simply been injured and lived." Ake v. Birnbaum, 156 Fla. 735, 25 So.2d 213, 221 (1945). The cause of action for wrongful death is "an entirely new cause of action" which is based on "an entirely new right" in enumerated survivors of the deceased. Id.
The historically based and commonly understood distinction between wrongful death claims and personal injury claims is reflected in various federal statutes which make explicit reference to wrongful death claims as distinct from personal injury claims. See 28 U.S.C. § 1411; 28 U.S.C. § 2672; 45 U.S.C. § 51; 46 U.S.C. § 30104. The distinction is similarly reflected in the case law references to the two types of claims. These abundant references in the case law make it clear that wrongful death claims are a separate and *583 distinct category  not simply a subcategory of personal injury claims. See Florida Bar v. Went for It, Inc., 515 U.S. 618, 620, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (referring to Florida Bar Rule of Professional Conduct 4-7.4 regulating communication which "`concerns an action for personal injury or wrongful death'"); Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 554, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (discussing availability of prejudgment "interest in personal injury and wrongful-death suits"); Van Dusen v. Barrack, 376 U.S. 612, 613, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (referring to "over 150 actions for personal injury and wrongful death" arising from crash of commercial airliner); Atchison, Topeka, & Santa Fe Ry. Co. v. Sowers, 213 U.S. 55, 69, 29 S.Ct. 397, 53 L.Ed. 695 (1909) (discussing statute that "refers to the common law or previous statutes of the territory governing actions for personal injuries or wrongful death").
The plaintiff can point to nothing in the overall statutory scheme of CERCLA which supports reading the reference to actions for personal injury as encompassing actions for wrongful death.
The remedial purpose underlying the enactment of the FRCD is not a basis for expanding the scope of the FRCD beyond the meaning supported by the long-established and commonly understood distinction between actions for personal injury and actions for wrongful death. This is especially true because the FRCD is a statutory provision which preempts state law within a field "traditionally occupied" by the states. Medtronic, Inc., 518 U.S. at 485, 116 S.Ct. 2240. In such circumstances, it is inappropriate "to infer a scope of pre-emption beyond that which clearly is mandated by Congress' language." Cipollone, 505 U.S. at 531, 112 S.Ct. 2608 (Blackman, J., concurring in part). The scope of the pre-emption goes no further than is required by "`the clear and manifest purpose of Congress.'" Medtronic, Inc., 518 U.S. at 485, 116 S.Ct. 2240 (quoting Rice 331 U.S. at 230, 67 S.Ct. 1146).
The view we adopt here is inconsistent with the holding in Freier v. Westinghouse Electric Corp., 303 F.3d 176, 198-99 (2d Cir.2002), "that wrongful death claims under New York law were meant to be encompassed by" the FRCD. Although acknowledging that the reference in the FRCD provision to actions for personal injury "is not entirely free of ambiguity," id. at 198, the court concluded in Freier that there was "no valid basis for inferring that Congress meant § 9658 to distinguish between an action for wrongful death . . . and an action brought by a living victim," id. at 199. In support of this conclusion, the court reasoned that it "was not Congress's intent" that a "company whose handling of hazardous wastes caused personal injury would be financially better off if its victim died." Id. at 200. The court did not make reference to the principles applicable to interpreting the scope of federal statutes preempting state law within fields traditionally occupied by the states.
A strong policy argument can no doubt be made in favor of including wrongful death claims within the scope of the FRCD. But this question of policy was for the Congress to decide. If the Congress intended to adopt a policy of providing the same protection for wrongful death claims as for personal injury claims, the addition of two words  "wrongful death"  to the statute would have been sufficient to make that purpose "`clear and manifest.'" Medtronic, Inc., 518 U.S. at 485, 116 S.Ct. 2240 (quoting Rice, 331 U.S. at 230, 67 S.Ct. 1146).
Congress instead chose to use a term of art  a term with a well-established meaning in the law and common understanding *584  that does not include wrongful death claims within the scope of the FRCD. It is not necessary to infer the exclusion of wrongful death claims from the coverage of the FRCD. That exclusion is entailed by the ordinary meaning of the language the Congress chose to employ in the statute. Given the distinct  albeit related  purposes served by personal injury actions and wrongful death actions, there is nothing irrational about the policy choice reflected in the statutory text by which we are bound.
The judgment in favor of CSX is therefore affirmed.
Affirmed.
DAVIS, J., and SULLIVAN, IRENE H., Associate Judge, Concur.
NOTES
[1] § 768.16-.27, Fla. Stat. (1995).
[2] The second presumption requires that the first presumption not be employed as a basis for "imposing the narrowest possible construction on preemptive language when read in isolation." Omega World Travel, Inc. v. Mummagraphics, Inc., 469 F.3d 348, 352 (4th Cir.2006).