# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3015

_____

Joan Najbar,                                          *
                                                      *
            Appellant,                                *
                                                      *   Appeal from the United States
      v.                                              *   District Court for the
                                                      *   District of Minnesota.
The United States of America,                         *
                                                      *
            Appellee.                                 *

_____

Submitted:  March 16, 2011
Filed: August 12, 2011

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Pursuant to the Federal Tort Claims Act (the FTCA), Joan Najbar filed this lawsuit against the United States alleging four state-law causes of action.  The district court granted the government's motion to dismiss for lack of subject-matter jurisdiction, and Najbar appeals.  We affirm, although on a ground different from that relied on by the district court.

I.

The government argues that the factual allegations in Najbar's complaint, even if true, are insufficient to establish subject-matter jurisdiction. We therefore treat them as true and proceed to consider whether the government's argument is correct. See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

Najbar's complaint alleges that on September 29, 2006, she mailed a letter to her son, a soldier serving with the United States Army in Iraq. Two weeks later that letter was returned to her, undelivered. The envelope had been stamped, in red ink: "DECEASED." This was the first that Najbar had heard of her son's death.

Distraught at the news that her son had died, Najbar contacted the United States Postal Service (the Postal Service) requesting additional information. When it was unable to help her, she called the Red Cross. After some investigation, the Red Cross discovered that Najbar's son was, in fact, alive. As a result of receiving the erroneously stamped letter, Najbar suffered severe emotional distress requiring medical treatment.

Najbar filed an administrative claim with the Postal Service, but it was denied. A request for reconsideration was also denied. Having exhausted those administrative remedies, Najbar filed suit under the FTCA, asserting four state-law causes of action: (1) intentional infliction of emotional distress; (2) negligence; (3) negligent infliction of emotional distress; and (4) negligence *per se*.

The government moved to dismiss the lawsuit on the ground that the United States' sovereign immunity deprived the district court of subject-matter jurisdiction. Pointing out that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising out of . . . misrepresentation," 28 U.S.C. § 2680(h), or "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal

matter," 28 U.S.C. § 2680(b), the government argued that Najbar's claims arose out of either a misrepresentation (*i.e.*, my son was alive when you told me he was dead), or lost, miscarried, or negligently transmitted mail. The district court agreed in part, concluding that Najbar's claims arose from a Postal-Service "misrepresentation," but not from its "loss, miscarriage, or negligent transmission" of her letter.

## II.

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). Because the Postal Service "is an independent establishment of the executive branch of the Government of the United States," with "significant governmental powers," it "enjoys federal sovereign immunity absent a waiver." Dolan v. U.S. Postal Serv., 546 U.S. 481, 483-84 (2006) (internal quotation marks omitted).

Such a waiver is provided by the FTCA, which "appl[ies] to tort claims arising out of activities of the Postal Service," 39 U.S.C. § 409, and permits:

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

That waiver is limited, however, by a number of exceptions, see 28 U.S.C. § 2680, two of which the government says apply here. The first preserves the government's immunity from "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Id. § 2680(h) (the misrepresentation exception). The second preserves the same for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." Id. § 2680(b) (the postal-matter exception).

If either exception applies, then the district court properly dismissed Najbar's suit for want of jurisdiction. If neither applies, then Najbar's suit may proceed. We review the applicability of these exceptions *de novo*. Hart v. United States, 630 F.3d 1085, 1088 (8th Cir. 2011).

We begin with the postal-matter exception, which the government argued before the district court and in its brief to this court.[1] Najbar cannot sue on "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b). Although there is a "general rule that a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign, . . . this principle is unhelpful in the FTCA context, where unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute, which waives the Government's immunity from suit in sweeping language." Dolan, 546 U.S. at 491-92 (citations and internal quotation

---

[1]Although the government has not cross-appealed the district court's conclusion that the postal-matter exception does not apply, it may, as appellee, defend that court's judgment on any ground supported by the record, see Mass. Mut. Life Ins. Co. v. Ludwig, 426 U.S. 479, 480-81 (1976) (per curiam), and, in any event, we are obligated to determine the extent of our jurisdiction, see Hart, 630 F.3d at 1088-89; United States v. U.S. Fid. & Guar. Co., 309 U.S. 506, 513 (1940) ("It is a corollary to immunity from suit on the part of the United States . . . that this immunity cannot be waived by officials.").

marks omitted). "Hence, the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." Id. at 492 (internal quotation marks omitted).

Accordingly, in Dolan, the Supreme Court "identif[ied] those circumstances which are within the words and reason of the [postal-matter] exception," id. (internal quotation marks omitted), concluding that it was "likely that Congress intended to retain immunity, as a general rule, only for injuries arising, directly or consequentially, because mail either fails to arrive at all or arrives late, in damaged condition, or at the wrong address." Id. at 489; see also id. at 486-87 ("[M]ail is 'lost' if it is destroyed or misplaced and 'miscarried' if it goes to the wrong address," while "'negligent transmission' does not go beyond negligence causing mail to be lost or to arrive late, in damaged condition, or at the wrong address."). The Court thus interpreted the scope of the exception in terms of the consequences of negligent acts, rather than in terms of the acts themselves. See id. at 497 (Thomas, J., dissenting). Claims for injuries stemming from certain consequences (i.e., from "mail either fail[ing] to arrive at all or arriv[ing] late, in damaged condition, or at the wrong address," id. at 489), are barred, while claims for other injuries are not. We must therefore determine whether Najbar's injury resulted from a consequence covered by the exception.

Najbar's letter was not "los[t]," see § 2680(b); it was returned to her. Nor was it returned "in damaged condition." See Dolan, 546 U.S. at 486. Except for the government's stamp on the envelope, the letter's condition upon receipt was no different from its condition when sent. The government argued below that "it's not a stretch to say that a letter, an envelope that contains incorrect information[, i.e., a "DECEASED" stamp,] is damaged or not worth as much and, therefore," arrives in damaged condition. Hr'g Tr. at 33:3-13. Like the district court, we disagree. Both the "words and reason" of the exception counsel against such an expansive theory of

"damage." Dolan, 546 U.S. at 487, 492; see id. at 489 (providing, as an illustrative example, the "shattering of shipped china"). Najbar is not claiming, for example, that the government's over-inked stamp bled through the envelope rendering the letter's words unreadable, or that the action of stamping the envelope was so forceful as to crumple the pages inside. Nor is Najbar seeking to recover for the cost of the now-useless envelope. The "letter[]," see § 2680(b), was not returned to Najbar "in damaged condition," see Dolan, 546 U.S. at 486.

There remains the question whether Najbar's claim "aris[es] out of" the letter's "miscarriage," see § 2680(b), that is, whether it is a claim "for injuries arising, directly or consequentially, because mail . . . arrive[d] . . . at the wrong address." Dolan, 546 U.S. at 489. According to Najbar, the letter was properly addressed to her son. It therefore should have gone to him but did not. It arrived at the wrong address.

There is little doubt that had the envelope contained her son's "medicines or a mortgage foreclosure notice" on his home, the "nondelivery or late delivery" of which caused "personal or financial harms," the postal-matter exception would bar Najbar's claims. See Dolan, 546 U.S. at 489. "Such harms, after all, are the sort primarily identified with the Postal Service's function of transporting mail throughout the United States." Id.

Najbar says that her claims are a bit different. She is not alleging that she was damaged because the letter was not properly carried to its destination, see id., nor is she alleging that her emotional injuries stemmed from her disappointment or frustration at the very fact that the letter was improperly returned to her, see Naskar v. United States, 82 Fed. Cl. 319, 319, 321-22 (Fed. Cl. 2008) (concluding that the postal-matter exception applied to claims of "'mental harassment' and harm to . . . reputation . . . based on the fact that the package was not delivered to the proper address" but was instead returned to the sender). Rather, her claim is that she was

injured when the government informed her by a stamp on a returned envelope that her son was dead.

We conclude that the postal-matter exception bars claims for these injuries. As a general matter, the Postal Service has a duty to deliver letters to their intended recipients. When it concludes, even negligently, that a letter is undeliverable, it returns that letter to the sender. Sometimes, as in this case, it will provide the sender with the reason why it was, or believed it was, unable to deliver the letter. In most cases, such miscarriage will result in minimal injury to the sender, perhaps nothing more than the cost of another envelope and stamp. Other times, as here, the miscarriage and attendant reason therefor may cause severe emotional distress. Nevertheless, that distress is the result of a miscarriage—a consequence falling within the postal-matter exception.

Najbar was injured in an uncommon way, one in which we might not ordinarily expect the Postal Service to injure its customers. Indeed it is not difficult to think of examples of the direct harms usually identified with the miscarriage of letters. The letter might be delayed, accidentally opened by someone other than the intended recipient, or never reach its intended destination. As a result, the sender might miss a mortgage payment or experience distress. The injury Najbar alleges, belief that the intended recipient has died, may be less typical, but it is still another example of the harm that may result when the Postal Service "fail[s] in [its] obligation to deliver mail in a timely manner to the right address." Dolan, 546 U.S. at 487. The postal-matter exception bars suits for "injuries arising, directly or consequentially," from that failure. Id. at 489.

Dolan's observation that the postal-matter exception is limited to harms of "the sort primarily identified with the Postal Service's function of transporting mail throughout the United States," is not to the contrary. Id. at 489. Barbara Dolan's mail was neither lost nor miscarried. It was left on her porch, where she tripped over it.

-7-

The Supreme Court noted that § 2680(b)'s "careful[] delineati[on of] just three types of harm (loss, miscarriage, and negligent transmission)," emphasized Congress's "intent to immunize only a subset of postal wrongdoing, not all torts committed in the course of mail delivery." Id. at 490 (citation and internal quotation marks omitted). Because Dolan's mail had not been lost or miscarried, the Court proceeded to examine whether "negligent transmission" included harms resulting from the negligent placement of otherwise properly delivered postal matter, and concluded that it did not.

Nothing in Dolan suggests that Congress has waived immunity for idiosyncratic harms resulting from consequences "delineated" in § 2680(b). Rather, Dolan held that negligent placement of otherwise properly delivered mail simply is not "negligent transmission." When such negligent placement results in consequences other than the damage, loss, tardiness, or misdirection of postal matter, § 2680(b) does not preserve the government's immunity. But, when the government's negligence does result in a consequence "delineated" in § 2680(b), the government retains immunity even for "consequential[]" damages flowing from that negligence.

### III.

We conclude that the postal-matter exception bars this lawsuit. Consequently, we need not address the misrepresentation exception. The district court's judgment dismissing the action is affirmed.

_____