# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 19, 2014      Decided November 14, 2014

No. 13-5168

ALAN GROSS AND JUDITH GROSS,
APPELLANTS

v.

UNITED STATES OF AMERICA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01860)

*Barry I. Buchman* argued the cause for appellants. With him on the briefs were *Scott D. Gilbert*, *Natalie A. Baughman*, and *Emily P. Grim*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence* and *Michelle Lo*, Assistant U.S. Attorneys.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Cuban Liberty and Democratic Solidarity (Libertad) Act of 1996, Pub. L. No. 104–114, 110 Stat. 785 (1996) (codified at 22 U.S.C. § 6021 *et seq.*), aimed "to assist the Cuban people in regaining their freedom and prosperity, as well as in joining the community of democratic countries that are flourishing in the Western Hemisphere." *Id.* § 3, 22 U.S.C. § 6022(1). The Act authorized the President "to furnish assistance and provide other support for individuals and independent nongovernment organizations to support democracy-building efforts for Cuba." *Id.* § 109, 22 U.S.C. § 6039. In that regard, the United States Agency for International Development ("USAID") entered a contract with a private consulting firm, Development Alternatives, Inc. ("DAI"), to provide humanitarian support to groups within Cuba. DAI, in turn, contracted with Alan Gross to train the Jewish community in Cuba to use and maintain information and communication technologies, such as mobile phones, wireless technologies, and personal computers. As his fifth trip to Cuba was drawing to a close in December 2009, Mr. Gross was detained and interrogated by Cuban authorities. In 2011, he was convicted for his participation in "a subversive project of the U.S. government that aimed to destroy the Revolution through the use of communications systems out of the control of [Cuban] authorities" and sentenced to fifteen years' imprisonment. Compl. ¶ 115 (alteration in original).

In 2012, Mr. Gross and his wife Judith sued DAI and the United States, alleging negligence, gross negligence, negligent infliction of emotional distress, and loss of consortium in connection with Mr. Gross's work in Cuba. In addition to physical and emotional harm suffered by Mr. Gross, they alleged that they "have suffered significant economic losses *due to* Mr. Gross's wrongful arrest and continuing wrongful detention," including "the destruction of Mr. Gross's business," lost income, legal fees, and medical expenses. *Id.* ¶ 129

(emphasis added). The Grosses settled their claims against DAI. The United States moved to dismiss the claims against it on the ground of sovereign immunity. The district court granted the motion, ruling that the foreign country exception to the waiver of sovereign immunity in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(k), foreclosed the Grosses' claims "[b]ecause [their] injuries . . . stem from [Mr.] Gross's imprisonment in Cuba," and that the exception did not, under rational basis scrutiny, violate the Equal Protection Clause as applied to the Grosses. *Gross v. Dev. Alternatives, Inc.*, 946 F. Supp. 2d 120, 124, 127 (D.D.C. 2013).

The Grosses appeal, and our review is *de novo*, *see, e.g.*, *Janko v. Gates*, 741 F.3d 136, 139 (D.C. Cir. 2014). The court "accept[s] the well-pleaded factual allegations set forth in [the Grosses'] complaint as true for purposes of this stage of the litigation and construe[s] reasonable inferences from those allegations in [their] favor, although we are not required to accept [the Grosses'] legal conclusions as true." *Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012). For the following reasons, we affirm the dismissal of the complaint.

**I.**

The FTCA waives the United States's sovereign immunity from tort claims and, subject to exceptions, renders the United States liable in tort as if it were a private person. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004); 28 U.S.C. § 1346(b)(1). When determining whether one of the exceptions to that waiver applies, the court "is to identify those circumstances which are within the words and reason of the exception — no less and no more." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 492 (2006) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)) (internal quotation marks omitted). Under the foreign country exception, the United States retains

sovereign immunity from "[a]ny claim arising in a foreign country." 28 U.S.C. § 2680(k). The Grosses contend the United States failed to meet its burden to show this exception applies. Insofar as they maintain the district court erred as a matter of law in construing the scope of the exception, their challenge must fail at the outset.

In *Sosa*, the Supreme Court held that the foreign country exception "bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." 542 U.S. at 712. The Court rejected the "headquarters doctrine," under which this exception had not applied to claims that a domestic act or omission had its operative effect in another country. *See id.* at 701–10. "[F]ollow[ing] the lead of *Sosa*," this court held in *Harbury v. Hayden*, 522 F.3d 413, 423 (D.C. Cir. 2008), that a plaintiff "cannot plead around the FTCA's foreign-country exception simply by claiming injuries . . . that are derivative of the foreign-country injuries at the root of the complaint" — in that case, a widow's "emotional injuries in the United States as a result of the death of her husband [in Guatemala]." *Id.*

Resisting the force of this precedent, the Grosses emphasize that Mr. Gross's alleged economic injuries "have occurred exclusively in the United States" and consequently are not derivative of the injuries he has suffered in Cuba. Reply Br. 6. They also point to the "unique facts," Appellants' Br. 20, that his injuries were sustained when the United States sent him to Cuba to fulfill U.S. objectives. But these arguments are either another way of invoking the headquarters doctrine rejected in *Sosa* or suggesting we can ignore this court's interpretation in *Harbury* of the foreign country exception as extending to derivative injuries, which we cannot do, *see LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996). Likewise, their characterization of Mr. Gross's economic injuries as "primary"

5

rather than "derivative," Reply Br. 7, does not advance the Grosses' cause because it misapprehends the holding in *Harbury* and ignores the allegations of their own complaint. The Grosses' complaint attributes all of their alleged injuries to Mr. Gross's imprisonment in Cuba; they allege that they "have suffered significant economic losses *due to* Mr. Gross's wrongful arrest and continuing wrongful detention." Compl. ¶ 129 (emphasis added). The complaint, on its face, therefore establishes that the Grosses' alleged economic injuries are "based entirely on" injuries suffered by Mr. Gross in Cuba and are "derivative" of those injuries under *Harbury*, 522 F.3d at 423.[1]

The Grosses insist that to cloak the United States in immunity when "it sends a U.S. citizen into a foreign country to accomplish U.S. Government objectives in what the United States knows to be a dangerous fashion, and that citizen suffers at least some injury in the United States as a result," would create a "sweeping new 'government operations' exception."

---

[1] The Grosses' reliance on the non-binding analysis in *S.H. v. United States ("S.H. II")*, — F. Supp. 2d. —, No. CIV. S-11-1963 LKK D, 2014 WL 3362366 (E.D. Cal. July 8, 2014), and *S.H. ex rel. Holt v. United States ("S.H. I")*, No. CIV.S-11-1963 LKK DAD, 2013 WL 6086775 (E.D. Cal. Nov. 19, 2013), is unavailing. In *S.H.*, the Eastern District of California addressed the foreign country exception in a negligence case where the alleged injuries to a child born in Spain consisted of catastrophic neurological damage and cerebral palsy. A threshold question was when and where the cerebral palsy "occurred." The *S.H.* district court conducted a choice-of-law analysis to conclude, in the murky medical diagnostic context, that her injury occurred in the United States. *See S.H. II*, 2014 WL 3362366, at *14, 16–17. Because the complaint here alleges that Mr. Gross's primary "injury" is his imprisonment in Cuba, *see* Compl. ¶ 139, no choice-of-law analysis is necessary to determine that the foreign country exception bars the Grosses' claims.

Appellants' Br. 20–21. This view is foreclosed by the plain text of the foreign country exception and cases interpreting it. In *Harbury*, the court considered the potential effect of allowing derivative claims to proceed, despite the foreign country exception, explaining that to do so "would threaten to 'swallow the foreign country exception whole.'" 522 F.3d at 423 (quoting *Sosa*, 542 U.S. at 703). Insofar as the Grosses seek to highlight the inequity in denying redress to individuals sent to foreign countries at the behest of the United States, their policy argument is better directed to Congress.

The foreign country exception thus deprived the district court of jurisdiction to address the Grosses' FTCA claims, all of which are based on or derivative of injuries suffered in Cuba.

**II.**

The Grosses' contention under the Equal Protection Clause fares no better. Reprising an argument they raised in opposing the government's motion to dismiss the complaint, they maintain that the foreign country exception is unconstitutional as applied to them because it "differentiates between two classes of U.S. citizens injured due to U.S. Government negligence: those whose injuries occur abroad and those whose injuries occur in the United States." Appellants' Br. 21. Applying rational basis scrutiny, which the Grosses agreed was the proper inquiry, the district court found that a rational basis for the disparity exists because the foreign country exception "protect[s] the United States' coffers from the whims of foreign law," *Gross*, 946 F. Supp. 2d at 126.

The Grosses maintain that "it is irrelevant whether Congress's basis in enacting the foreign country exception was rational in general," Appellants' Br. 22, and that application of the foreign country exception cannot be sustained because its

"sole stated purpose" — avoiding the application of foreign law — "would not be served" in their case, *id*. at 24. The district court thus erred, they continue, by rejecting their constitutional challenge without performing a choice-of-law analysis or allowing for discovery and "by ascribing a purpose to the foreign country exception different from the one actually stated by Congress." *Id.* at 28.

As an initial matter, to accept the Grosses' view that the foreign country exception applies only when foreign law would control is contrary to Supreme Court instruction. In *Smith v. United States*, 507 U.S. 197 (1993), the Court rejected the argument that, as to a FTCA claim arising in Antarctica, which has no law of its own, applying the foreign country exception was unnecessary to further the exception's goal of "insulat[ing] the United States from tort liability imposed pursuant to foreign law." *Id*. at 200. In so doing, the Court looked to the text of the foreign country exception, 28 U.S.C. § 2680(k); a different provision of the FTCA, 28 U.S.C. § 1346(b), which it had interpreted as "more than a choice-of-law provision" and instead to "delineate[] the scope of the United States' waiver of sovereign immunity"; and "the presumption against extraterritorial application of United States statutes." *Id*. at 201–03.

Thereafter, in *Sosa*, the Court reaffirmed that Congress did not write the exception to apply only when foreign law would be implicated. The Court rejected the notion of "selective application of headquarters doctrine . . . when a State's choice-of-law approach would not apply the foreign law of place of injury." 542 U.S. at 711. Such an application of the exception, the Court concluded, would result in "a scheme of federal jurisdiction that would vary from State to State, benefitting or penalizing plaintiffs accordingly," *id.*, and the idea Congress would have intended such a scheme of federal jurisdiction "is

too implausible to drive the analysis to the point of grafting even a selective headquarters exception onto the foreign country exception itself," *id.* at 712. The Court acknowledged that the argument "would be well taken . . . if Congress had written the exception to apply when foreign law would be applied. But that is not what Congress said." *Id.* at 711. The foreign country exception, the Court observed, was "written at a time when the phrase 'arising in' was used in state statutes to express the position that a claim arises where the harm occurs; and the odds are that Congress meant simply this. . . ." *Id.*

Consequently, the Grosses attempt to minimize *Sosa* as addressing only the scope of the foreign country exception, not an as-applied challenge to the constitutionality of the exception. Even so, well-settled precedent establishes that, under the lenient rational basis test, "a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)) (internal quotation marks omitted). "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (alterations in original) (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010)) (internal quotation marks omitted); "[t]he substantive rule of law is the same for both challenges," *id.*; *see Smith v. City of Chicago*, 457 F.3d 643, 652 (7th Cir. 2006).

The precedents on which the Grosses rely to support their view that the foreign country exception should not apply where doing so would be inconsistent with the exception's stated purpose, even if that purpose is otherwise legitimate, are not to

the contrary.  In *Wheeling Steel Corp. v. Glander*, 337 U.S. 562 (1949), the Supreme Court held that an Ohio *ad valorem* tax that had the purpose and effect of taxing the goods of non-residents, while exempting the goods of Ohio residents, denied two out-of-state corporations the equal protection of Ohio law.  *Id.* at 563–64, 573–74.  The Court did not hold, as the Grosses suggest, that "application of [a] statute in a manner that is inconsistent with its stated purpose is unconstitutional," Appellants' Br. 22.  In *Shelby County v. Holder*, 133 S. Ct. 2612 (2013), the Supreme Court upheld a facial challenge to the constitutionality of the coverage provision of the Voting Rights Act on the ground that it was "irrational for Congress to distinguish between States in such a fundamental way based on 40-year-old data, when today's statistics tell an entirely different story."  *Id.* at 2630–31.  That the Court insisted that Congress's judgment be rational in light of "current conditions," *id.* at 2631, does not aid the Grosses; it is not the "current circumstances," Appellants' Br. 22, of a particular litigant that mattered to the Court, but rather the "current conditions" that were before Congress when it enacted the statute, *see Shelby County*, 133 S. Ct. at 2628–29.

Similarly, the Grosses' objections that the district court erred by failing to engage in a fact-specific analysis and to allow discovery fail.  In *Richmond Medical Center for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009), on which the Grosses rely, the Fourth Circuit did not state that all as-applied challenges require a court to engage in a fact specific analysis.  Neither does *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013), on which they also rely, show the district court was required to allow discovery.  Although these cases indicate that "a developed factual record" may sometimes be required in as-applied constitutional challenges, *Richmond Med. Ctr.*, 570 F.3d at 172; *see also Greater Balt. Ctr.*, 721 F.3d

at 282, neither addressed rational basis review in the context of an as-applied Equal Protection challenge. (The district court opinions in *S.H.* also do not aid the Grosses as no constitutional challenge to the foreign country exception was raised. *See* 2014 WL 3362366; 2013 WL 6086775.) Moreover, the government responds, inasmuch as the Grosses never moved for discovery nor defended against the motion to dismiss their complaint on the ground they had not yet taken discovery, no error can be assigned on that ground. *See Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 525 (D.C. Cir. 2001). Even on appeal, the Grosses do not identify any particular discovery they needed to defend against the government's motion to dismiss on jurisdictional grounds. Absent a plausible basis that would permit them to overcome the jurisdictional bar, the Grosses fail to show error by the district court in any event. *Cf. Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 198 (D.C. Cir. 1992).

Finally, the Grosses object that the district court erred by ascribing a purpose to the foreign country exception different from that stated by Congress and acknowledged by courts, by referring to logistical burdens potentially posed by their lawsuit. *See Gross*, 946 F. Supp. 2d at 127. We find no error. Having properly rejected the Grosses' framing of the Equal Protection inquiry — as requiring a rational basis for the exception as applied to a U.S. citizen injured abroad where domestic law would control the tort liability — the district court rejected their Equal Protection challenge to the exception, referring to Congress's concern about the effect on the Treasury absent the exception. *See id.* at 126 (citing *Sosa*, 542 U.S. at 707). The district court then pointed out that even under the Grosses' framing of the inquiry the foreign country exception did not violate the Equal Protection Clause. The district court noted that other circuit courts of appeal had recognized the exception protects the United States from particularly burdensome litigation. *See id.* at 127. Its own unremarkable observation

regarding logistical difficulties involving foreign injuries required no development of the record and was irrelevant to the Grosses' claims.

Accordingly, we affirm the judgment of dismissal. In so doing, we endorse the views expressed in the penultimate paragraph of the district court's opinion, *Gross*, 946 F. Supp. 2d at 127.